E. R. ROBINSON *v.* STATE COMPENSATION COMMISSIONER
*et al.*

(No. 9043)

Submitted September 24, 1940. Decided October 8, 1940.

*Rollins & Rollins,* for appellant.
*Brown, Jackson & Knight,* for appellees.

RILEY, PRESIDENT:

The petitioner, E. R. Robinson, an employee of the Traux-Traer Coal Company, on November 29, 1935, was awarded compensation for the complete loss of the sight in his left eye. The last payment on the award was made on December 17, 1937. He now claims that the injury to his left eye has so affected his right eye that he is totally blind, for which compensation for total permanent disability is sought.

The controlling question presented by the instant record is jurisdictional. It concerns the effect of the failure of the claimant to make a written application for further adjustment of his claim within one year after the expiration of his award. This question, in turn, involves the construction of Code, 23-4-16, as amended and reenacted by Section 16, Article IV, Chapter 78, Acts of the West Virginia Legislature, 1935, which section provides:

> "The power and jurisdiction of the commissioner over each case shall be continuing, and he may from time to time, after due notice to the employer, make such modifications or changes with respect to former findings or orders as may be justified: *Provided,* That no further award may be made * * * in cases of non-fatal injuries, except * * * within one year after the commissioner shall have made the last payment in any permanent disability case.
>
> "In any case where an injured employee under this section shall make application in writing for a further adjustment of his claim, the commissioner shall finally pass upon and determine the merits of such claim within ninety days after the filing thereof, and after such final determination the claimant shall have the right of an appeal as provided by article five of this chapter."

Three letters constitute the only written evidence relative to the claimant's application for an additional award: The first from clamant's employer to the commissioner, dated December 24, 1937, attaching a letter from Dr. W. B. Wilson to the company's physican to the effect that the condition of claimant's right eye can be corrected by glasses; the second from Dr. Wilson to Dr. G. C. Schoolfield, a physician employed by the Compensation Department, dated January 5, 1938, to the effect that there is no evidence of injury to the right eye and no pathology except that claimant is presbyopic, having a vision in the eye of 20/40 which can be corrected with lenses, and expressing the opinion that the claimant should not be compensated therefor; and the third from the commis-

sioner to the claimant, dated January 6, 1938, advising the latter that the award of 33% for the loss of his left eye compensated him amply; that the defect in vision of the right eye is in no way connected with the injury, and, further, that the right eye, according to Dr. Wilson, can be corrected by glasses.

In January, 1939, the claimant stopped work, claiming that he was totally blind. A memorandum on file in the Compensation commissioner's office indicates that claimant, on March 22, 1939, appeared before one of the employees of the department and requested further disposition of his claim, and was told that his right to have an adjustment of his claim expired on December 17, 1938, the expiration of the one-year period following the date of the last payment under the award. On April 7, 1939, an attorney employed by claimant referred him to Dr. Shepherd whose report was not filed at the time. However, on August 18, 1939, claimant's present attorney of record wrote the commissioner asking him for adjudication of the claim and submitted Dr. Shepherd's report. Shortly thereafter, on August 25, 1939, claimant filed his affidavit, averring that he had appeared personally before the commissioner twice during 1937, in the summer and a few days before Christmas; and that on or about January 2, 1938, he was referred by the company officials to Dr. Wilson, who gave him no information concerning the condition of his eye but stated that he would make a report to the commissioner.

On the jurisdictional question involved, claimant raises two points: (1) A claimant, who seeks readjustment of his claim under Code, 23-4-16, as amended and reenacted by Section 16, Article IV, Chapter 78, Acts of the West Virginia Legislature, 1935, is not required to file a written petition for readjustment; and (2) the claimant here made a proper application within the prescribed one-year period.

In support of the first point counsel directs our attention to the structure of Code, 23-4-16, as amended and reenacted, 1935, that is, that it contains two paragraphs:

the first, except for slight changes in verbage, reenacting Code, 23-4-16, and the second being new. He also points out that the orginal workmen's compensation act (1913) placed no time limit on applications for readjustment; that limitations as to time for making such applications were first enacted in Section 40, Chapter 71, Acts of the Legislature, 1929, (Code, 23-4-16); and that the provision (see second paragraph of section hereinbefore set out in *haec verba*) limiting the time within which the commissioner shall decide the merits of applications for readjustment made in writing was added in 1935. He argues that the provision in the second paragraph aforesaid should not be construed to amend the first paragraph so as to require that applications for readjustment be in writing. However, it occurs to us that the large number of applications for compensation and readjustment requires great efficiency in the administration of the workmen's compensation fund. This efficiency cannot be attained if oral claims and applications, unaccompanied by such conduct on the commissioner's part as to be tantamount to an estoppel, are sufficient. We do not think that the legislature by its enactment of Section 16, Article IV, Chapter 78 (Acts 1935), intended to inject confusion into the onerous duties of the commissioner. No West Virginia case holds that oral application for readjustment of itself is sufficient to reopen a claim. In *France* v. *State Compensation Commissioner*, 117 W. Va. 612, 186 S. E. 601, involving an original application for compensation, the employer failed to report the injury within six months thereafter, as required by Code, 23-4-15. Within the statutory period, claimant orally reported his injury to the commissioner and requested compensation. On the same and a later day, both within the statutory period, the commissioner wrote to the employer advising him of claimant's inquiry, and requesting the employer to investigate the matter and inform the commissioner, but received no response. It seems important to note in the appraisal of the *France* case that the section of the Code there involved gives the commissioner discretion to hear

any claim for compensation after the six-months period, in case the employer does not report the claim within the six months. The recent case of *Wilkins* v. *State Compensation Commissioner*, 120 W. Va. 424, 198 S. E. 869, does not stand for the proposition, suggested by claimant's counsel, that oral application for readjustment of itself is sufficient. On the contrary, it simply holds that a letter written to the commissioner by claimant's counsel asking that it be treated as a formal application and stating that counsel would file additional evidence, which letter was accepted by the commissioner in lieu of a formal written application, is sufficient to toll the statutory period.

We do not think that Code, 23-4-16, either in its present or original form ever lent itself to the construction contended for on behalf of claimant. As suggested the *France* and *Wilkins* cases are not in point on the question of statutory construction now before us. Thus it seems to us that a claimant seeking readjustment must file application in writing during the statutory period, or make an affirmative showing that following the oral request and within the period, the commissioner pursued such a course of conduct that he is estopped to deny that a proper application had, in fact, been filed.

Claimant's second point that a proper application had been filed within the statutory period, is based upon the three letters heretofore referred to. Though these letters were written within the one-year period, they do not constitute a written application for readjustment such as we think is required under the statute. The commissioner's letter of January 6, 1938, to the effect that claimant had been amply compensated for loss of the left eye, and that the defect of vision of the right eye was in no way connected with the injury, etc., in our opinion, does not indicate such a course of conduct as to estop him to deny that a proper claim had, in fact, been filed. In the *Wilkins* case, the letter of the commissioner, accepting the letter of claimant's attorney in lieu of a written application and indicating an opportunity would be given to file proofs, was clearly such conduct on the part of the commissioner

as to estop him. The letter in that case is such as would lull claimant and his attorney into a sense of security, which naturally led them to let the year's period elapse before filing formal written application for readjustment. The letter of January 6, 1938, on the contrary, instead of tending to lull claimant into a sense of security, constitutes a categorical statement that claimant was entitled to no compensation. If it had any effect on claimant's mind that effect would have been to place him on the alert in the protection of whatever rights he may have had. We are indeed at a loss to see how this letter constituted such a course of conduct as to measure up to the requirements set forth in the *Wilkins* case.

Finally, on the question of jurisdiction claimant says that the commissioner's l e t t e r of January 6, 1938, amounted to an adjudication of the claim, an adjudication which did not become final because it did not state the time allowed for filing an objection. Reliance is had upon Code, 23-5-1, as amended and reenacted by Section 1, Article 5, Chapter 104, Acts West Virginia Legislature, 1937, which provides, in part, that "upon the making or refusing to make any award, or upon the making or refusing to make any modification or change with respect to former findings or orders, as provided by section sixteen, article four, of this chapter, the commissioner shall give notice, in writing, to the * * * claimant * * * of his action, which notice shall state the time allowed for filing an objection to such finding * * * ." Only a cursory glance at this section discloses that its reference to applications for readjustments is expressly confined to those filed under section sixteen. The last-mentioned letter, we think, did not and could not constitute an order adjudicating a claim for readjustment because, in fact, no written claim had been filed within the statutory period, and the commissioner did not engage in such a course of conduct as would estop him to deny the pendency of a claim for readjustment. Moreover, an adjudication presupposes a hearing, and this record does not disclose that any hear-

ing was had nor could any hearing be had except in cases where proper application had been filed or waived.

The foregoing, we think, disposes of the question of jurisdiction presented by this record. Questions going to the merits of the case have become moot. The commissioner, in our opinion, did not err in refusing claimant further adjustment, and the ruling of the appeal board in sustaining the commissioner was likewise without error.

*Affirmed.*